NOTICE
This Order was filed under Supreme
Court Rule 23 and is not precedent
except in the limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190075-U

NO. 4-19-0075

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 24, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| ROBERT L. SCHWALB, | ) | No. 14CF124 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the evidence sufficient to prove defendant
committed criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2010)) as
alleged in count VII beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant, Robert L. Schwalb, was convicted of

aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2010)) and two counts of

criminal sexual assault (*id.* §§ 11-1.20(a)(1), (2)), and subsequently sentenced to three

consecutive terms of imprisonment totaling 30 years. Defendant appeals, arguing the evidence

was insufficient to sustain one of his criminal sexual assault convictions. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charges

¶ 5 The State charged defendant by amended information with two counts of aggravated criminal sexual assault (counts II and III) (*id.* § 11-1.30(a)(2)) and five counts of criminal sexual assault (counts IV, V, VII, VIII, and IX) (*id.* §§ 11-1.20(a)(1), (2)). Six of the charges related to an incident that occurred on May 25, 2012. However, count VII—the sole conviction defendant challenges on appeal—alleged that "on or about May 1, 2012, *** defendant[,] knowing that [C.H.] was unable to give knowing consent, committed an act of sexual penetration with [C.H.], in that he intentionally placed his penis into the vagina of [C.H.]"

¶ 6                                      B. Pretrial Motions

¶ 7 Prior to trial, the State filed a motion to allow certain out-of-court statements by C.H. into evidence under section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10(a)(2) (West 2014)) on the basis she was "a moderately, severely, or profoundly intellectually disabled person." The trial court granted the State's motion. The court also granted the State's motion brought pursuant to section 106B-5 of the Code (725 ILCS 5/106B-5 (West 2016)), requesting C.H. be allowed to testify via closed-circuit television at trial.

¶ 8                                      C. The Bench Trial

¶ 9                                      1. *Evidence Presented*

¶ 10                                      a. Adam Potter

¶ 11 Adam Potter, a patrol sergeant with the Morgan County Sheriff's Office, testified that on the evening of May 25, 2012, he was dispatched to Woodson, Illinois, in response to "a sexual assault complaint." When Potter arrived, he made contact with C.H., who informed him that she wanted to make a complaint.

¶ 12 C.H. told Potter that earlier that evening, she had gone to her neighbor's house to pet his dogs; C.H. identified her neighbor as defendant. While she was petting the dogs,

- 2 -

defendant came outside and began conversing with her. At some point, defendant escorted C.H. to his backyard and began "fondling her breasts and placed one of his hands down her pants and started fondling her genitals." Defendant then asked if she wanted to have sex and "he pulled down her pants and his." "After both of their pants had been pulled down by [defendant], she said that he had sex with her." C.H. also informed Officer Potter "that approximately three weeks prior *** the same thing had happened in [defendant's] backyard, and she also mentioned that in the past, [defendant] had fondled her on several occasions." Officer Potter asked C.H. to elaborate on the previous incident, and she responded, " 'the same thing that took place today.' "

¶ 13    After speaking with C.H., Officer Potter went to defendant's residence to inquire about the accusations against him. At first, defendant denied the accusations, telling Officer Potter that he escorted C.H. to his backyard to "show[ ] her some weeds." When Potter expressed his disbelief, defendant "looked at the ground, paused for a minute, and said, 'Okay, I did it. Just take me to jail.' " Asked to elaborate, defendant admitted he "fondled her breasts and inserted *** his hand down the front of her pants and played with her genitals *** and told her to get down on the ground and had intercourse with her ***." Officer Potter then asked defendant, " 'Does that mean you put your penis in her vagina?' And he said, 'Yes.' "

¶ 14                            b. Jason Robertson

¶ 15    Jason Robertson, a detective with the Morgan County Sheriff's Office, testified that he interviewed defendant at the police station on the evening of May 25, 2012; a recording of the interview was admitted into evidence and played for the trial court. The following relevant exchange occurred during the interview:

        "DETECTIVE ROBERTSON: Okay. What did [Officer Potter] tell you he
        was there talking to you for?

[DEFENDANT]: Um, about the neighbor. Raping her.

* * *

DETECTIVE ROBERTSON: Okay.

[DEFENDANT]: I said, 'No, I didn't rape her.' He said, 'You put your hand over her mouth?' I said, 'Nope.' I showed him where I—we did it at.

DETECTIVE ROBERTSON: Which was where?

[DEFENDANT]: Behind the house by the fence.

DETECTIVE ROBERTSON: Okay.

[DEFENDANT]: By the bushes. That's the second time.

DETECTIVE ROBERTSON: The second time you've had sex with her?

[DEFENDANT]: Yeah.

DETECTIVE ROBERTSON: Okay.

[DEFENDANT]: First time it didn't work too good [*sic*]. I couldn't even get a hard on. And it's been, I think, about three weeks ago, I think. So like we tried it again, and I don't even think I penetrated her this time."

Later in the interview, defendant admitted he had previously touched C.H.'s breasts "about 20 times, probably."

¶ 16                                    c. C.H.

¶ 17          After C.H. testified about the alleged assault on May 25, 2012, the following exchange ensued between her and the prosecutor:

"Q. Did anything like that ever happen before?

A. (No response.)

Q. Did it happen one time or more than one time or do you remember?

- 4 -

A. Two.

Q. Two times?

* * *

Q. Okay. So [C.H.], I was asking you, did this happen one time or more than one time or do you remember?

A. I think you—I think you said one time, I think.

Q. It's not what I say, it's whatever you say.

A. Oh.

Q. Do you remember?

A. Oh. Two times. Two times.

Q. Can you tell me about the other time that it happened? Do you remember what happened?

A. Two times."

¶ 18                                    d. Defendant

¶ 19        Defendant testified on his own behalf. He conceded that he had "fondled [C.H.'s] breast" on multiple occasions, but he testified he could not remember specific details about those occasions. Defendant also admitted he told Detective Robertson that May 25, 2012, was not the first time he had sex with C.H., but he testified he could no longer remember any details of the earlier occasion either.

¶ 20                                    2. *Guilty Finding*

¶ 21        Following presentation of the evidence and closing arguments, the trial court found defendant guilty of all counts.

¶ 22                          D. Posttrial Proceedings and Sentences

¶ 23    Defendant filed a timely posttrial motion in which he argued, in relevant part, the evidence was insufficient to sustain his conviction for count VII. The trial court denied the motion and, upon application of one-act, one-crime principles, sentenced defendant to consecutive terms of imprisonment of 15 years on count III, 7 years and 6 months on count VII, and 7 years and 6 months on count VIII. Defendant filed a timely motion to reconsider sentence, which the court denied.

¶ 24    This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26    On appeal, defendant argues the State failed to prove he committed criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2010)) on or around May 1, 2012, beyond a reasonable doubt. Specifically, he contends the evidence was insufficient to prove he committed an act of sexual penetration because "[n]o witness testified that [he] placed his penis in C.H.'s vagina."

¶ 27    When reviewing the sufficiency of the evidence, the "critical inquiry" is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses[,]" as "it is the responsibility of the trier of fact to 'fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *People v. Cooper*, 194 Ill. 2d 419, 431, 743 N.E.2d 32, 40 (2000) (quoting *Jackson*, 443 U.S. at 319). Reviewing courts will not set aside a conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985).

¶ 28    Criminal sexual assault, as charged in count VII, contains two essential elements: (1) "an act of sexual penetration" and (2) "know[ledge] that the victim is unable to understand the nature of the act or is unable to give knowing consent ***." See 720 ILCS 5/11-1.20(a)(2) (West 2010). As noted, defendant argues only that the State failed to prove he committed an act of sexual penetration. Sexual penetration "means any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person ***." *Id.* § 11-0.1.

¶ 29    Here, we find the evidence was sufficient to prove defendant committed an act of sexual penetration during the encounter with C.H. that was alleged to have occurred on or around May 1, 2012. Officer Potter, who interviewed defendant and C.H. on May 25, 2012, testified defendant told him he had sex with C.H. on that date. When Potter asked him to elaborate, defendant explicitly stated he inserted his penis into C.H.'s vagina. Potter further testified C.H. told him the same thing had happened "approximately three weeks prior." Later on May 25, 2012, in a recorded interview with Detective Robertson, defendant, unsolicited, told Robertson he had had sex with C.H. "about three weeks ago." Defendant continued, "So like we tried it again, and I don't even think I penetrated her *this time*." At trial, defendant did not present any evidence to rebut the evidence he had had sex with C.H. approximately three weeks prior to May 25, 2012. Instead, he simply testified he could no longer remember specific details of that event.

¶ 30    Based on this evidence, it would be reasonable to infer defendant committed an act of sexual penetration during his encounter with C.H. on or around May 1, 2012. See *People v. Herring*, 324 Ill. App. 3d 458, 465, 754 N.E.2d 385, 391 (2001) ("The trier of fact is entitled to draw all reasonable inferences from both circumstantial and direct evidence [citation], *including an inference of penetration*." (Emphasis in original.)). While it is true no witness

testified defendant placed his penis in C.H.'s vagina, the absence of direct evidence does not necessarily create a reasonable doubt of guilt. See *People v. Raymond*, 404 Ill. App. 3d 1028, 1041, 938 N.E.2d 131, 144 (2010) ("The trier of fact is allowed to make reasonable inferences based on the evidence presented, and may find penetration in the absence of direct evidence."). Here, there was sufficient circumstantial evidence presented to allow the trial court to reasonably infer defendant committed an act of sexual penetration on the occasion in question. Accordingly, we conclude the evidence was sufficient to prove defendant committed the offense of criminal sexual assault on or around May 1, 2012, beyond a reasonable doubt.

¶ 31                                    III. CONCLUSION

¶ 32             For the reasons stated, we affirm the trial court's judgment.

¶ 33             Affirmed.